DREW, J.
 

 |,Kelly McKinley appeals a judgment dismissing her legal malpractice suit against Jacqueline Scott as untimely under La. R.S. 9:5605. We affirm.
 

 FACTS
 

 Kelly McKinley (“McKinley”) hired Jacqueline Scott (“Scott”) to handle a criminal matter for her on July 7, 2006. McKinley was alleged to have stolen funds from her former employer. Scott was initially hired to negotiate a settlement with the former employer in an attempt to avoid McKinley being prosecuted.
 

 Scott agreed to represent McKinley in negotiations with her former employer for a fee of $5,000. This agreement was memorialized in a letter from Scott to McKinley dated July 11, 2006. McKinley paid a $2,000.00 retainer to Scott in July of 2006, and then paid an additional $24,398.50 later that month. Scott returned $20,000.00 shortly after receiving the second payment. McKinley later received a check for $1,398.50, allegedly after she filed a complaint with the Louisiana Attorney Disciplinary Board.
 
 [1]
 
 This left $5,000.00 retained by Scott.
 

 McKinley was formally charged with felony theft in October of 2006. Later that month, Scott enrolled as McKinley’s counsel and McKinley entered a plea of not guilty.
 
 [2]
 

 By letter dated May 30, 2007, McKinley fired Scott. In this letter, McKinley demanded a billing statement and the return of the unearned balance of her retainer account. McKinley wrote that she was terminating |2the attorney-client relationship partly because: (i) she had not received a detailed statement of the services for which she was charged; (ii) Scott had failed to investigate or research in order to corroborate McKinley’s statements that contradicted her accusers’ statements; (iii) Scott had failed to subpoena her former employer’s records; (iv) Scott’s office had failed to return her phone calls; (v) McKinley was kept waiting for an unreasonable amount of time during office visits, and Scott and her associates were unprepared when they met with McKinley dur
 
 *83
 
 ing these visits; (vi) Scott and her associates were late for her court appearances; (vii) Scott had failed to take action in apparently a separate legal action involving the allegedly illegal use of her personal information for the purposes of obtaining a credit report and contacting her creditors; and (viii) Scott had failed to return her phone calls to discuss a May 2007 article in the
 
 Caddo Inquisitor
 

 [3]
 

 which McKinley believed corroborated her statements and contradicted her accusers’ statements.
 

 Pursuant to McKinley’s request, Scott sent an invoice to her on Juné 19, 2007. Termed a “rough itemization” by Scott, this invoice showed 53.85 billable hours at a rate of $275.00 per hour, for a total charge of $14,168.40. Nevertheless, Scott eventually returned all but $5,000.00 to McKinley.
 

 McKinley filed suit against Scott on June 18, 2008. McKinley alleged that Scott: (i) failed to exercise due diligence in advising her to plead guilty; (ii) failed to make all reasonable and competent efforts in | ¿preparing her defense; (iii) failed to communicate with appropriate employees of the Caddo Parish District Attorney’s office; (iv) intentionally misled McKinley into thinking that Scott had consulted with the prosecutor assigned to the case; (v) failed to perform competent services; (vi) wrongly advised her not to seek employment; (vii) failed to account for client funds or return unused client funds; (viii) failed to safeguard client property; (ix) refused to tender file materials; and (x) failed to comply with the Rules of Professional Conduct. McKinley further alleged that Scott attempted to defraud her by charging an excessive fee when McKinley requested the return of her funds, submitting a false invoice, and converting McKinley’s funds without earning them. In her petition, McKinley specifically asserted the application of La. R.S. 9:5605.1, which provides for the interruption of prescription on a claim of theft or misappropriation of a Ghent’s funds by an attorney when the client has filed a complaint with the Office of Disciplinary Counsel, Louisiana Attorney Disciplinary Board (“LADB”), alleging the theft or misappropriation of the client’s funds.
 

 Scott filed the exception of prescription, arguing that McKinley’s suit was untimely under La. R.S. 9:5605. The trial court sustained Scott’s exception. McKinley contends on appeal that her allegations of fraud preclude the application of La. R.S. 9:5605, prescription was interrupted when she filed a complaint against Scott with the LADB, and the trial court should have allowed her to amend her complaint in order to remove the grounds for the exception of prescription.
 

 LPISCUSSION
 

 The party raising the exception of prescription ordinarily bears the burden of proof at the trial of the peremptory exception.
 
 Spott v. Otis Elevator Co.,
 
 601 So.2d 1355 (La.1992). However, when prescription is evident from the face of the pleadings, the plaintiff bears the burden of showing the action has not prescribed.
 
 Id.
 

 When evidence is introduced at the hearing on the peremptory exception of prescription, the district court’s findings of fact are reviewed under the manifest error-elearly wrong standard of review.
 
 Carter v. Haygood,
 
 2004-0646 (La.1/19/05), 892 So.2d 1261.
 

 La. R.S. 9:5605
 

 La. R.S. 9:5605, which governs legal malpractice actions, provides in relevant parts:
 

 
 *84
 
 A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
 

 B.... The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
 

 _k* * *
 

 E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
 

 McKinley contends that the allegations of fraud in her petition triggered the application of La. R.S. 9:5605(E). The peremp-tive period referred to in Subsection (E) refers to the three-year peremptive period only; the presence of fraud notwithstanding, the one-year peremptive period is always applicable.
 
 Dauterive Contractors, Inc. v. Landry & Watkins,
 
 2001-1112 (La.App. 3d Cir.3/13/02), 811 So.2d 1242. Therefore, we examine McKinley’s claims in light of the one-year peremptive period.
 

 Under La. R.S. 9:5605, an action should not be found perempted if it is brought within one year of the date of discovery and the record shows that the claimant was reasonably unaware of malpractice prior to the date of discovery and the delay in filing suit was not due to willful, negligent, or unreasonable action of the client.
 
 Teague v. St. Paul Fire & Marine Ins. Co.,
 
 2007-1384 (La.2/1/08), 974 So.2d 1266. This discovery exception is inapplicable after three years from the date of the alleged malpractice.
 
 Id.
 

 The “date of discovery” from which prescription or peremption begins to run is the date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant.
 
 Id.
 

 | ^McKinley had knowledge of the facts forming the basis for her legal malpractice action no later than May 30, 2007, when she sent the certified letter terminating Scott’s services. This letter stated essentially the same allegations that were incorporated in her petition filed June 18, 2008. McKinley’s letter accused Scott of being negligent in preparing for McKinley’s defense and attacked Scott’s professional services in general.
 

 McKinley contends that she was unaware of her possible fraud claim until she received the invoice from Scott on June 19, 2007. This contention is without merit. McKinley’s fraud claims were part and parcel of her malpractice claims. We note that she admitted as much in her appellate brief, when her attorney wrote, “[McKin
 
 *85
 
 ley] specifically alleged fraudulent acts that were malpractice including the failure to safeguard, account for, and return unused client funds.” We further note that money was indeed at issue in her May 30 letter, as McKinley requested a detailed billing statement and the unearned balance of her retainer account, and averred that her client fund account included a $4,437 overage.
 

 McKinley had one year from May 30, 2007, to file suit against Scott. Accordingly, her malpractice action filed on June 18, 2008, was untimely. The trial court was not clearly wrong in granting the exception.
 

 La. R.S. 9:5605.1
 

 McKinley argues that her legal malpractice action was timely filed pursuant to La. R.S. 9:5605.1 because prescription was suspended or interrupted when she filed a complaint with the LADB on August 9, 2007. La. R.S. 9:5605.1 reads:
 

 |7A. Notwithstanding the provisions of R.S. 9:5605, prescription of a claim of theft or misappropriation of funds of a client by the client’s attorney shall be interrupted by the filing of a complaint with the Office of Disciplinary Counsel, Louisiana Attorney Disciplinary Board, by the client alleging the theft or misappropriation of the funds of the client.
 

 B. The record of the hearing of the Office of Disciplinary Counsel, Louisiana Attorney Disciplinary Board, held to review the claim of theft or misappropriation of the funds of the client may be admissible as evidence in the civil action brought to recover the stolen or misappropriated funds, and in such action, the court may award reasonable attorney fees to the client.
 

 Although Scott admitted that a complaint was filed, McKinley never introduced a copy of it into the record, so the trial court was without the benefit of knowing exactly what was alleged in the complaint. In addition, although McKinley alleged that Scott failed to return unused funds, she did not allege that funds were actually stolen or misappropriated from her client account. What was at issue was apparently in the nature of a fee dispute, and Scott has returned all but $5,000.00 of the amounts advanced to her. This is not a situation where an attorney absconded with her client’s settlement funds. McKinley failed to establish that La. R.S. 9:5605.1 applied so as to make her claim timely.
 

 Request to Amend Petition
 

 McKinley argues on appeal that the district court erred in sustaining the exception of prescription without allowing her leave to amend her petition in order to remove the grounds of the exception. La. C.C.P. art. 934 provides:
 

 When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment | ¿within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.
 

 The right to amend one’s petition is qualified by the restriction that the objections to the petition be curable; further, the decision to allow amendment is within the discretion of the trial court.
 
 Broussard v. F.A. Richard & Associates, Inc.,
 
 1999-10 (La.App. 3d Cir.5/5/99), 740 So.2d 156,
 
 writ denied,
 
 1999-1048 (La.6/4/99), 744 So.2d 625.
 

 
 *86
 
 Permitting McKinley to amend her petition would not change the fact that her May 2007 letter to Scott showed she was obviously aware of her malpractice claim and that Scott had retained more funds than McKinley thought she was entitled. The trial court did not abuse its discretion in denying leave to amend.
 

 CONCLUSION
 

 At appellant’s costs, the judgment AFFIRMED.
 

 [1]
 

 . The complaint was allegedly filed on August 9, 2007.
 

 [2]
 

 . In April of 2007, trial was set for July 23, 2007.
 

 [3]
 

 . A weekly newspaper that provides detailed coverage of local criminal matters.